# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **DONNA KING** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:20-cv-01201-CLM |
| | ) |
| **NATIONWIDE AGRIBUSINESS** | ) |
| **INSURANCE COMPANY, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

A windstorm caused about $24,000 damage to Larry King's chicken houses.[1] King filed an insurance claim with Nationwide Agribusiness Insurance Company ("Nationwide"). Nationwide denied King's claim, then King sued Nationwide and King's insurance agent, Randy Jones & Associates ("RJA"), in state court. Nationwide removed the case to this court by claiming that the court has diversity jurisdiction. Doc. 1. King has moved the court to remand. Doc. 8.

As explained within, the dispositive question is whether King 'fraudulently joined' RJA as a defendant to destroy complete diversity and thus avoid federal court. The court finds below that King did not fraudulently join RJA, so the court **GRANTS** King's motion to remand.

---

[1] Larry King passed away after filing this case. Donna Kay King is now the named plaintiff. *See* Doc. 19.

# STATEMENT OF THE FACTS

### A. Insurance Procurement

RJA was Larry King's insurance agent when King obtained the Nationwide policy. In this capacity, RJA inspected King's chicken houses to ensure that the houses complied with Nationwide's underwriting guidelines. King's houses passed RJA's inspection, so King managed to obtain a yearlong policy for a $15,000 premium. The windstorm hit one day into the policy.

### B. The Insurance Claim

The windstorm damaged the houses' trusswork. King timely filed a claim with Nationwide. Nationwide assigned an investigator and hired a third-party company, EFI Global, to inspect the houses. According to Nationwide, EFI Global determined that improper construction, plus wear and tear, caused the damage—not the windstorm. So Nationwide denied King's claim. King spent a little over $24,000 to repair the damage.

### C. Procedural Background

King sued Nationwide and RJA in Marshall County Circuit Court. Nationwide removed this case in accordance with 28 U.S.C. § 1446, citing diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Doc. 1. Nationwide alleges that (a) the amount in controversy exceeds $75,000 and (b) complete diversity of citizenship exists between Hubbard and all *properly joined* defendants. The court emphasizes

'properly joined' because RJA is an Alabama citizen, which would destroy diversity. But Nationwide alleges that King fraudulently joined RJA, which if true, means that only Nationwide (an Ohio citizen) counts towards diversity.

King has moved to remand back to state court. Doc. 8. King makes two arguments. First, King argues that he pleaded a viable claim against RJA, which if true, would mean that RJA destroys complete diversity. Second, King argues that Nationwide does not meet its burden of proving the amount of controversy.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). For removal to be proper, the federal court must have subject matter jurisdiction over the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams,* 482 U.S. 286, 392 (1987). Any doubts regarding removal should be resolved in favor of remand. *See City of Vestavia Hills v. Gen. Fidelity Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

## ANALYSIS

Nationwide must prove two things to justify removal under diversity jurisdiction: (1) complete diversity of citizenship of the parties and (2) that King has placed more than $75,000 in controversy. *See* 28 U.S.C. § 1332. Because King seeks $24,000 in compensatory damages for breach of contract (Count 1), and he could receive three times that amount (*i.e.* $72,000) in punitive damages if he can prove the breach resulted from bad faith (Count 2), the court finds that Nationwide has met its burden of showing that "the matter in controversy exceeds the sum or value of $75,000." *Id.* So jurisdiction boils down to whether King 'fraudulently joined' RJA as a defendant to destroy the diversity between King and Nationwide.

### A. The Eleventh Circuit's "No Possibility of Recovery" test

In *Alred v. Preferred Compounding Corp.*, 2020 WL 429486 at *3-4 (N.D. Al Jan. 28, 2020), this court explained the history of the fraudulent joinder doctrine and how the circuits have adopted four different tests to apply it. While the court maintains that the "reasonable basis" test most accurately reflects Supreme Court precedent, *see id.*, the Eleventh Circuit has adopted the "no possibility of recovery" test, and this court must apply it.

Under the Eleventh Circuit's test, district courts must determine whether there is a "possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants." *Crowe v. Coleman*, 113 F.3d

1536, 1538 (11th Cir. 1997). In other words, this court must place itself in the shoes of a state court judge faced with a dispositive motion. In ruling on this hypothetical motion, the court "must evaluate all factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Id.* And if this court finds "even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants," the court "must find that joinder was proper and remand the case to state court." *Id.*

**B. Application of the "No possibility of recovery" test**

Having laced up its state court shoes, this court finds that there is a possibility that a state court could deny a motion to dismiss Count 3 of King's complaint, which alleges that RJA negligently procured King's policy with Nationwide.

King must establish four elements to prove a negligent procurement claim: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury. *Crook v. Allstate Indemnity Co.*, 2020 WL 3478552 at *8 (Ala. June 26, 2020). If King can prove all four elements, RJA can still defeat the claim if it can prove that King was contributorily negligent. *Id.*

In its notice of removal, Nationwide argues that a state court would dismiss King's claim against RJA for two reasons: (1) RJA did not owe King a duty and (2) King was contributorily negligent. Doc. 1 at 5-15. The court considers each.

1. <u>Duty</u>: King pleads that RJA owed him a duty to procure insurance (doc. 1-1 ¶27), and "as part of that procurement process," RJA was "required . . . to inspect the subject poultry houses as part of the risk assessment process to evaluate if the poultry houses complied with Defendant Nationwide's underwriting guidelines" (*id.* ¶28). King also pleads that RJA "knew that Defendant Nationwide routinely denied poultry house windstorm claims based on improper construction as well as wear and tear" (¶30), yet RJA "determined [King's] poultry houses were in superior condition" (¶31).

In other words, King alleges that—as part of the procurement process—RJA owed King a duty "to use the care, skill, and diligence that a reasonable and prudent agent would have used in similar circumstances," Alabama Pattern Jury Instruction 20.28 (Negligent Failure to Obtain Insurance), and that—if the post-storm inspection is to be believed—RJA breached that duty when he failed to discover or disclose the improper construction, plus wear and tear, that led Nationwide to deny his claim.

In *Crook*, a similarly situated plaintiff pleaded the same claim but called it "negligent inspection." *Crook*, 2020 WL 3478552 at *8. The Alabama Supreme Court said that "negligent inspection" is just a form of "negligent procurement of insurance," subject to the same four elements this court outlined above. Unfortunately, the supreme court did not analyze the duty element because the court resolved the case on the agent's contributory negligence defense. *Id.*

6

But the takeaway from *Crook* is that, just last year, the Alabama Supreme Court said that inspection-based claims like King raises here are potentially viable negligent procurement claims. And the court did not suggest that an agent who performs an inspection as part of the procurement process does not owe his client a duty to conduct that inspection in a reasonable and prudent manner. *Id.* Nor has Nationwide cited an Alabama case that says that. Instead, Nationwide relies on a case that held that agents do not "voluntarily assume a duty to advise a client regarding the adequacy of the client's insurance coverage." Doc. 1 at 7 (quoting *Somnus Mattress Corp. v. Hilson*, 280 So. 3d 373, 383 (Ala. 2018). But King does not allege that RJA negligently advised him that his coverage was inadequate; King alleges that when RJA took on the role of inspector, RJA assumed a duty to conduct his inspection in a reasonable and prudent manner.

All things considered, there is at least a possibility that an Alabama court would hold that when an agent conducts an inspection as part of the procurement process, that agent has a duty to conduct a reasonable investigation. *Crowe*, 113 F.3d at 1538. So Nationwide's duty-based argument cannot support removal.

2. <u>Contributory Negligence</u>: Because contributory negligence is a defense, not an element of the claim, "the question of contributory negligence is normally one for the jury," not dispositive motions. *Crook*, 2020 WL 3478552 at *9. In Alabama, courts can summarily dismiss a claim on contributory negligence grounds

7

only if there is "undisputed evidence" that "the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." *Id.*

Here, a "conscious appreciation of the danger at the moment the incident occurred" means that, when RJA signed the policy, RJA knew that his chicken houses suffered from "improper construction as well as wear and tear" (doc. 1-1 ¶13), even though RJA had just inspected the houses and reported that they "were in superior condition" (*id.* ¶31). Nationwide offers no evidence—much less undisputed evidence—that RJA knew that his chicken houses would fail an inspection when he signed the policy.

Nationwide instead argues that King should have known from reading his policy that the policy would not cover the storm damage. Doc. 1 at 9-15. But this argument misreads Count 3. Count 3 is not based on a legal dispute over the policy's language; it stems from a factual dispute rising from the different conclusions that RJA (the pre-windstorm inspector) and EFI Global (the post-windstorm inspector) drew from their inspections.

Because Nationwide presents no evidence that (a) RJA's conclusion was wrong and (b) King knew that RJA's conclusion was wrong when he agreed to the policy, the court finds that there is a possibility that an Alabama state court would deny a dispositive motion based on contributory negligence. *Crowe*, 113 F.3d at

1538. So Nationwide's contributory negligence-based argument cannot support removal. *Id.*

## CONCLUSION

Because there is a possibility that King's claim against RJA would survive a dispositive motion in an Alabama state court, the court finds that King did not fraudulently join RJA as a defendant. Because RJA is an Alabama citizen, complete diversity does not exist between the parties. So this court lacks jurisdiction under 28 U.S.C. § 1332 and King's motion to remand is due to be **GRANTED**. The court will enter a separate order that does so.

**DONE** on this 7th day of May 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE